UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JUDY N. WOODALL, | ) | CIVIL ACTION 4:05-513-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

      A hearing was held before the undersigned in Florence, South Carolina on March 22, 2006. Robert F. Daley, Jr., Assistant U.S. Attorney, and David F. Stoddard, counsel for plaintiff, were both present at the hearing and presented argument.

## I.  PROCEDURAL HISTORY

      The plaintiff, Judy N. Woodall, filed applications for DIB on May 29, 1996, alleging inability to work since June 30, 1995, due to nerves, foot problems and breast problems (Tr. 47-49, 52). Her applications were denied at all administrative levels, and upon reconsideration (Tr. 12-120, 40).

Plaintiff filed a request for hearing on January 9, 1997 (Tr. 45). Following a hearing held on June 20, 1997, (Tr. 193-218), the ALJ, Thomasine G. Mason, issued a decision on March 19, 1998, denying plaintiff's claim (Tr. 12-24). As the Appeal's Council denied plaintiff's request for review, on April 18, 2001, the U.S. District Court for the District of South Carolina remanded the case for further administrative proceedings (Tr. 5-6). A supplemental hearing was held on April 17, 2002 (Tr. 329-386), after which the ALJ issued a decision on January 24, 2003, finding plaintiff was not disabled because she retained the residual functional capacity to perform her past relevant work as a shirt bagger (Tr. 224-235). On December 15, 2004, the Appeals Council denied plaintiff's request for review (Tr. 219-221), making the ALJ's determination the Commissioner's final decision for purposes of judicial review under. See 20 C.F.R. § 404.981 (2005). As plaintiff has exhausted her administrative remedies, this case is now ripe for judicial review.

## II. FACTUAL BACKGROUND

The plaintiff, Judy N. Woodall, was born April 26, 1943, and was 54 years old at the time of the ALJ's decision. (Tr. 47). Plaintiff has a high school education and has worked as a shirt bagger, presser packer, cashier, and substitute teacher (Tr. 56).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)    The ALJ selectively evaluated the medical evidence, failed to consider important medical evidence, and failed to adequately evaluate the Claimant's credibility.

2

    (2)    The decision fails to consider the combined effect of claimant's various physical symptoms and complaints, and incorrectly gives weight to absence of objective evidence of pain.

In the decision of January 24, 2003, the ALJ found the following:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2000, but not thereafter.

2. The claimant has not engaged in substantial activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. The claimant has the residual function capacity to perform a range of work restricted to preclude work other than simple, routine work, with low levels of job stress and no more than limited contact with the general public.

8. The claimant's past relevant work as a shirt bagger did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

9. The claimant's medically determinable depressive disorder, not otherwise specified, and anxiety disorder, with somatic complaints do not prevent the claimant from performing her past relevant work as a shirt bagger.

>   10.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through December 31, 2000, the date the claimant was last insured for disability purposes (20 CFR § 404.1520(e)).

(Tr. 234-235).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

---

[1] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

On July 12, 1995, plaintiff was seen at Calhoun Falls Family Practice Center due to complaints of nausea and epigastric pain. She indicated she had ulcer problems for many years. Plaintiff was treated with medication and told very vigorously to quit smoking (Tr. 111).

On June 28, 1996, plaintiff underwent a consultative examination by Bruce S. Johnston, M.D. Plaintiff reported taking Goody Powders and Tylenol PM for aches and pains and smoking up to two packs of cigarettes a day. She reported her medical history as partial amputation of her left fingers, abdominal hysterectomy, and treatment for angina, asthma, anemia, bronchitis, peptic ulcer disease, right plantar fasciitis, and migraine headaches. Upon examination, Dr. Johnston found plaintiff was in no acute distress and had raspy breath sounds, regular heart rate and rhythm, normal curvature and mobility in her back, normal neurological examination, and had good range of motion

in all her joints and extremities. His diagnosis included chronic anxiety, possibly agoraphobia, chronic bronchitis, "smoker," chronic dyspepsia, possibly esophageal reflux, menopausal symptoms, mastalgia and chronic arthralgia of the knees and feet. Dr. Johnston concluded plaintiff was competent to manage funds in her own behalf (Tr. 121-123).

On August 21, 1996, plaintiff was seen by Spurgeon Cole, Ph.D., for a consultative mental examination. Upon examination, Dr. Cole found plaintiff was oriented and had relevant coherent speech; there was no indication of delusions, hallucinations, or psychotic thought productions; judgment and reasoning abilities were satisfactory; she was tense and anxious and somewhat fearful; and displayed very poor stress tolerance and had few coping skills. Plaintiff reported that she was able to do housework, go to the grocery store, and handle money. Dr. Cole diagnosed a generalized anxiety disorder and dependent personality disorder. He concluded that plaintiff had rather intense anxiety around people, few coping skills, difficulty concentrating and maintaining focus when anxious, and some physical difficulties that were probably exacerbated by emotional problems (Tr. 125-127).

On October 22, 1996, plaintiff was evaluated at the Abbeville Mental Health Center due to feelings of depression and worrying. Upon examination, plaintiff's affect was restricted and dysthymic; she was logical, coherent, and goal directed in her thought process; and she denied having thoughts of hurting herself or others. Alfred R. Ebert diagnosed major depression (recurrent, mild) and multiple somatic complaints. She was prescribed Effexor, an anti-depressant medication, and was advised that counseling was available (Tr. 176-178).

On November 19, 1996, plaintiff returned to the Abbeville Mental Health Center for a followup appointment. Dr. Ebert reported that plaintiff indicated she had tolerated Effexor well but

at times experienced mild stomach upset. Upon examination, plaintiff's affect was somewhat flat and her mood was up and down; she had no hallucinations or paranoia; she showed no evidence of wanting to hurt herself or others; her insight seemed to be improving; and her judgment was good. Dr. Ebert diagnosed major depression with multiple somatic complaints that "seem[ed] to respond[] somewhat to low dose Effexor." He recommended increasing her Effexor dosage and noted that therapy was available (Tr. 175).

A mammogram report dated December 16, 1996, was negative (Tr. 267).

On December 31, 1996, plaintiff reported to Dr. Ebert for a followup visit and reported that she had run out of medication and had gotten worse. Dr. Ebert restarted plaintiff on her medication and increased the dosage (Tr. 174).

Plaintiff returned to Dr. Ebert's office on February 4, 1997, reporting that she was feeling better and was 100% compliant with taking her medications. Dr. Ebert noted that plaintiff's energy was better and that her self-esteem, judgment and insight had improved. Dr. Ebert concluded that plaintiff's depression was improving, refilled her medications, and instructed her to return in six weeks (Tr. 173).

On May 20, 1997, plaintiff informed Dr. Ebert that she was doing the same and claimed to be 100% compliant with her medications. She noted that she had some good days but was unclear whether she had more good days than bad days. Dr. Ebert noted that plaintiff was doing about the same and continued to have symptoms of depression. He recommended increasing her Effexor and again noted therapy was available (Tr. 181).

Plaintiff was seen on May 6, 1998, by A.M. Bamashmus, M.D., at the request of her attorney. Plaintiff complained of having a nervous condition, crying a lot, and being unable to tolerate

pressure. Upon examination, plaintiff was alert and coherent; her thought processes were logical and goal directed; her memory was intact; and her judgment and insight were fair. Dr. Bamashmus diagnosed major depression recurrent with anxiety symptoms, rule out borderline IQ, and multiple medical problems including angina, osteoporosis, migraine and COPD. He noted that plaintiff had been taking a combination of Effexor and Vistaril, but decided on her own to stop the Effexor which caused a recurrence of her depressive symptoms. Dr. Bamashmus instructed plaintiff to go back on Effexor and to follow up at Abbeville Mental Health Center. Dr. Bamashmus stated that plaintiff was "non-functional and I don't think she will be functional in the near future"(Tr. 192-193).

On March 29, 1999, plaintiff complained of neck pain and dizziness and a cervical x-ray was negative and unremarkable (Tr. 285).

On April 19, 1999, plaintiff presented to Calhoun Falls Center with complaints of anxiety after her husband had a stroke. A diagnosis of anxiety was noted. Valium and Effexor were prescribed and plaintiff was instructed that she needed to quit smoking (Tr. 256).

On August 10, 2001, Dr. Cole noted that he had evaluated plaintiff on August 21, 1996, at which time she suffered from extreme anxiety, had difficulty interacting with people, and had problems with concentration. He also noted a recent diagnosis of major depression. Dr. Cole concluded plaintiff had difficulty concentrating and major depression along with anxiety disorder. He noted that she did not tolerate stress well, and that "even in a minor stressful situation her ability to focus her attention would deteriorate." (Tr. 320).

On January 26, 2002, plaintiff underwent a consultative psychiatric examination by Dennis C. Chipman, M.D. Plaintiff reported being depressed and having pain in her legs and feet. She reported that her daily activities consisted of washing dishes, attending church, and occasionally

going out to eat and to the grocery store. Upon examination, Dr. Chipman found plaintiff was mildly depressed, slightly sad, and slightly tense. He found she had constricted affect, no delusions or hallucinations, intact remote memory; and intact but "a bit decreased" concentration and attention span. Dr. Chipman found no evidence of major depression but noted a history of dependant personality. Based on her medical history, Dr. Chipman thought plaintiff had some generalized anxiety in the mid-1990s and had become chronically depressed. He characterized her symptoms as mild to occasionally moderate, but never severe. Dr. Chipman also noted that due to her smoking, plaintiff may have experienced dyspnea which could simulate a state of anxiety. Dr. Chipman concluded that plaintiff's condition was chronic, but that she could relate to people and follow simple instructions for job related activities with some trouble maintaining pace and behavior. In an assessment of ability to perform work-related mental activities, Dr. Chipman indicated that plaintiff had fair ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, perform simple job instructions, and maintain personal appearance. He found she had poor ability to deal with the public, deal with work stress, function independently, maintain attention, perform complex and detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability (Tr. 321-325).

## V. ARGUMENTS

Plaintiff first argues that the ALJ selectively evaluated the medical evidence and ignored important medical evidence. Specifically, plaintiff asserts that the decision failed to discuss Dr. Cole's conclusions. Plaintiff asserts that Dr. Cole noted in his first evaluation that plaintiff had limitation that would affect her ability to work. Plaintiff cites Dr. Cole's conclusions that "Judy has

rather intense anxiety around people. She is generally an anxious, tense and fearful person. She has few, if any, coping skills. . . She had a very simple, routine, repetitive type task at Abbeville Shirt Makers but quit because the level of anxiety was rather intense. When she gets extremely anxious, she does find it difficult to concentrate and to maintain her focus of attention. . . She apparently has some physical difficulties, but they are probably exacerbated by emotional problems." In the second evaluation, plaintiff asserts that Dr. Cole concluded that "Ms. Woodall has considerable amount of muscle tension along with increased autonomic activity and strong startle response. She has difficulty sleeping, she has low energy. She doesn't enjoy life and slow psychomotor responses. She has difficulty concentrating and is suffering from major depression along with anxiety disorder. She does not tolerate stress well and even in a minor stressful situation her ability to focus her attention will deteriorate."  (Tr. 320, plaintiff's brief p. 4).

Further, plaintiff argues that the ALJ briefly discussed Dr. Bamashmus' conclusions but disregarded them in their entirety. Plaintiff also argues that the ALJ totally discounted the specific conclusions in Dr. Chipman's Medical Source Statement and focused on only one positive aspect of his narrative report. Additionally, plaintiff argues that there is little discussion of the Abbeville Mental Health Center records in the portion of the decision evaluating the medical evidence.

Plaintiff argues that the limitations set out in Dr. Chipman's Medical Source Statement, if accepted, justify a finding of disability and that nothing in the medical record condradicts these conclusions.

Defendant argues that plaintiff's argument that the ALJ failed to consider Dr. Cole's opinion is without merit. Defendant contends that the ALJ discussed both of Dr. Cole's reports of psychological examination and that the ALJ's assessment of plaintiff's residual functional capacity

11

accommodated those limitations by restricting plaintiff to simple routine low-stress work with no more than limited contact with the public. Furthermore, defendant argues that the job of "bagger" does not involve significant contact with people. Defendant argues that the ALJ addressed the opinion of Dr. Bamashmus and concluded that his opinion that plaintiff was nonfunctional at the time was not supported by objective medical evidence in that he had only seen her once and failed to identify testing or other objective clinical findings as a basis for his conclusion. As to Dr. Chipman's opinions, defendant asserts that the ALJ relied on the majority of his medical opinion but discounted his checkmarked assessment form to the extent it differed from the findings in his narrative report. (Tr. 233).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id. An ALJ, therefore, must explain his reasons for disregarding a positive

opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

A review of the ALJ's decision reveals that she concluded the following with respect to the medical opinions:

> The medical evidence concerning the claimant's mental disorders establishes that such mental impairments create no more than mild restriction of her activities of daily living and moderate difficulties in maintaining social functioning. The claimant demonstrates moderate difficulties in maintaining concentration, persistence or pace. She has not experienced repeated episodes of decompensation of extended duration. Such marginal adjustment that even a minimal change in her environment would be expected to cause her to decompensate, an inability to function outside a highly supportive living arrangement for one year or longer, or a complete inability to function independently outside the area of her home. These limitations do not meet or equal the requirements of Sections 12.04, 12.06, or any other Section of the Listing of Impairments.

> . . . Any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations, must also be considered. . . in his report, Dr. Bamashmus commented that he considered the claimant to be "nonfunctional" at that time. Of course, it must be noted that Dr. Barnashmus is not a treating

13

> source for the claimant, having examined her only once, at the request of her attorney. He does not identify testing or other objective clinical findings as a basis for his conclusion, nor does he describe specific functional limitations to support it. The opinion of Dr. Bamashmus is not found to be supported by objective clinical findings or persuasive in evaluating the claimant's disability.
>
> Dr. Chipman prepared a Medical Source Statement relating to the claimant's condition at the time of his examination. While that document appears to suggest significant limitations in the claimant's mental residual functional capacity, it must be read in combination with the specific findings in his narrative report. That is, Dr. Chipman's description of the claimant's ability to follow simple job instructions is more useful than the "multiple choice" mark indicating a "fair" ability to do so. The narrative findings of Dr. Chipman have been considered in evaluating the claimant's residual functional capacity.

(Tr. 232-233).

The undersigned finds that while the ALJ set out Dr. Cole's conclusions from two evaluations, the ALJ did not discuss her reasoning for discounting them. Dr. Cole specifically stated the following:

> I had the opportunity to evaluate Ms. Woodall on August 21, 1996. At that time I indicated that she was suffering from extreme anxiety and had difficulty interacting with people, and problems with concentration. My diagnosis was Anxiety Disorder along with Dependent Personality Disorder. In addition, she has been diagnosed with suffering from a major depression. Dr. A.M. Bamashmus has diagnosed her as major depression and the Mental Health Center has also given her diagnosis of major depression subsequent to me having evaluated her.
>
> Ms. Woodall has a considerable amount of muscle tension along with increased autonomic activity and strong startle response. She has difficulty sleeping, she has low energy. She doesn't enjoy life and slow psychomotor responses. She has difficulty concentrating and is suffering from major depression along with anxiety disorder. She does not tolerate stress well and even in a minor

>    stressful situation her ability to focus her attention would deteriorate.

(Tr. 320).

The ALJ did not provide a proper justification as to why Dr. Cole's opinion should not be given controlling weight. Dr. Cole concluded that "She does not tolerate stress well and even in a minor stressful situation her ability to focus her attention would deteriorate." Further, Dr. Cole's conclusions were supported by the findings of Dr. Chipman and Dr. Bamashmus. Dr. Bamashmus stated that plaintiff was "non-functional and I don't think she will be functional in the near future." The ALJ justified her decision not to give Dr. Bamashmus' statement controlling weight by finding that he was not a treating source and that he did not identify testing or other objective clinical findings as a basis for his conclusion. (Tr. 233).

Additionally, plaintiff was sent to Dr. Chipman by the Administration for a consultative psychiatric examination in which he concluded that plaintiff suffers with depressive disorder, generalized anxiety disorder, and a mixed anxiety and depressed mood. (Tr. 324). Dr. Chipman stated the following in his narrative report:

> The patient is able to relate to people and could relate to coworkers. She could follow simple instructions for job-related activities but would have trouble maintaining pace and persistence throughout the day, primarily because of dependent behavior and also her having convinced herself that she is quite sick. There is no evidence of psychosis. She is made anxious when she is required to do something outside of the home but from time to time volitionally will do something that she wants to do. However, the outlook for meaningful rehabilitation is not very good since the condition has been so chronic.
> The condition is chronic and it can be expected to last 12 months more.

(Tr. 325).

Dr. Chipman further completed a Medical Source Statement(Mental) in which he found her ability to make occupational adjustments to be fair or poor in each category. Dr. Chipman stated that "Pt. is preoccupied, tense and chronically depressed. She has little insight. The[re] is some disorganization." (Tr. 326). Dr. Chipman concluded that plaintiff is impaired with her concentration, preoccupation, and is likely borderline intellectual functioning. (Tr. 327). Dr. Chipman found that her ability to maintain personal appearance was fair and her ability to behave in emotionally stable manner, related predictably in social situations, and demonstrate reliability was poor. Dr. Chipman concluded that "The pt. appears to have a number of impairments related to somatic complaints. There is chronic tension, chronic depression. These impairments impact her relatedness to other people, her willingness to deal with new information and work related activities." (Tr. 328). The ALJ stated in her decision that "Dr. Chipman's description of the claimant's ability to follow simple job instructions is more useful than the 'multiple choice' mark indicating a 'fair' ability to do so. The narrative findings of Dr. Chipman have been considered in evaluating the claimant's residual functional capacity." However, as set out above, Dr. Chipman stated the following in his narrative report: "She is made anxious when she is required to do something outside of the home but from time to time volitionally will do something that she wants to do. However, the outlook for meaningful rehabilitation is not very good since the condition has been so chronic. The condition is chronic and it can be expected to last 12 months more." (Tr, 325).

Based on Dr. Chipman's entire narrative in conjunction with his medical source statement, along with the supporting reports of Drs. Cole and Bamashmus, the ALJ improperly discounted these reports. Additionally, the ALJ failed to set out any contradictory medical source statement. Therefore, the ALJ improperly discounted Dr. Chipman's findings as to plaintiff's functional

16

limitations based on her mental impairments. Thus, the case is remanded to clarify plaintiff's residual functional capacity and to consider the vocational effect of the functional limitations found by Drs. Cole and Chipman through vocational expert testimony.

## VI.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

IT IS ORDERED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

IT IS SO ORDERED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

March 22, 2006  
Florence, South Carolina